**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
                                  :

CITY OF LONG BEACH, on behalf of itself   :
and all others similarly situated,

                                  :

                 Plaintiff,   :

                                  :

       v.   :

                                  :    Civil Action No. 1:19-cv-08725-LAK

TOTAL GAS & POWER NORTH   :
AMERICA, INC.; TOTAL, S.A.; and TOTAL   :
GAS & POWER, LTD.   :

             Defendants.   :

                                  :
----------------------------------------------------------x


**DEFENDANTS TOTAL S.A. AND TOTAL GAS & POWER LTD.'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 1

II. BACKGROUND .................................................................................................. 2

    A.  The Parties ................................................................................................. 2

    B.  Plaintiff Seeks to Hold the Foreign Defendants Liable for TGPNA's
        Purported Conduct. ................................................................................... 4

III. LEGAL STANDARD ......................................................................................... 6

IV. ARGUMENT ...................................................................................................... 7

    A.  The Court Lacks Personal Jurisdiction Over Either Foreign Defendant. ............... 7

        1.  The Statutory Bases for Exercising Personal Jurisdiction Over the
               Foreign Defendants Are Lacking. ................................................. 7

        2.  The Constitutional Requirements for Exercising Personal
               Jurisdiction Over the Foreign Defendants Are Lacking. ................... 11

        3.  Jurisdiction Over the Foreign Defendants Cannot Be Manufactured
               Through TGPNA's Alleged Contacts. ........................................... 14

        4.  Considerations of Fair Play, Substantial Justice, and International
               Comity Also Require Dismissal. ................................................... 21

    B.  Plaintiff Fails to State a Claim Against TOTAL S.A. or TGPL. ........................ 22

        1.  Plaintiff Does Not State a Claim for Direct Liability. ............................. 22

        2.  Plaintiff Does Not State a Claim for Derivative Liability Based on
               the Alleged Conduct of TGPNA. ................................................. 23

    C.  All Claims Should Be Dismissed Under Rule 12(f) for Resting on
        Unadjudicated Agency Accusations. ......................................................... 32

    D.  Plaintiff Also Fails to State Any Claim Against TOTAL S.A. or TGPL for
        the Same Reasons Explained in TGPNA's Motion to Dismiss. ........................ 32

V.  CONCLUSION ................................................................................................... 34

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*,
241 F. Supp. 3d 461 (S.D.N.Y. 2017)................................................................27, 28

*In re Alstom SA*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)........................................................................24

*In re Aluminum Warehousing Antitrust Litig.*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015).........................................................................20

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
716 F. App'x 23 (2d Cir. 2017) .................................................................................24

*Am. Lecithin Co. v. Rebmann*,
2017 WL 4402535 (S.D.N.Y. Sept. 30, 2017).....................................................16, 25

*Arquest, Inc. v. Kimberly-Clark Worldwide, Inc.*,
2008 WL 2971775 (S.D.N.Y. July 31, 2008) ...........................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009).........................................................................6

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003)......................................................................................33

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007).........................................................................6

*Bentivoglio v. Event Cardio Grp., Inc.*,
2019 WL 6341130 (S.D.N.Y. Nov. 27, 2019)......................................................25, 28

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)......................................................................................10

*In re BH S & B Holdings LLC*,
420 B.R. 112 (Bankr. S.D.N.Y. 2009).......................................................................25

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016)......................................................................................21

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*,
491 B.R. 335 (S.D.N.Y. 2013)...................................................................................30

*Wallace ex rel. Cencom Cable Income Partners II, Inc. v. L.P. Wood*,
752 A.2d 1175 (Del. Ch. 1999)............................................................................26, 27

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ....................................................................................................3

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018) ....................................................................................................20

*Chloé v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010) ....................................................................................................6

*Cohen v. Schroeder*,
    248 F. Supp. 3d 511 (S.D.N.Y. 2017) ...................................................................................28

*Cohen v. Schroeder*,
    724 F. App'x 45 (2d Cir. 2018) .............................................................................................27

*In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.*,
    2013 WL 1100770 (S.D.N.Y. Mar. 18, 2013) .......................................................................33

*Crosse v. BCBSD, Inc.*,
    836 A.2d 492 (Del. 2003) ......................................................................................................24

*Daimler AG v. Bauman*,
    571 U.S. 117, 134 S. Ct. 746 (2014) ...............................................................................11, 21

*Daniel v. American Bd. of Emergency Medicine*,
    428 F.3d 408 (2d Cir. 2005) ...............................................................................................7, 8

*Dennis v. JPMorgan Chase & Co.*,
    343 F. Supp. 3d 122 (S.D.N.Y. 2018) ...............................................................9, 10, 11, 12

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) .........................................................................15, 17, 18, 26

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
    228 F.R.D. 508 (S.D.N.Y. 2005) ..........................................................................................29

*Escude Cruz v. Ortho Pharm. Corp.*,
    619 F.2d 902 (1st Cir. 1980) .................................................................................................15

*Expoconsul Int'l, Inc. v. A/E Sys., Inc.*,
    711 F. Supp. 730 (S.D.N.Y. 1989) .........................................................................................8

*Fed. Deposit Ins. Corp. v. Dintino*,
    84 Cal. Rptr. 3d 38 (Cal. Ct. App. 2008) .............................................................................33

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995) .............................................................................24, 26

*Fowble v. Chesapeake & O. Ry. Co.*,
    16 F.2d 504 (S.D.N.Y. 1926) ......................................................................................11

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
    2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017) ............................................................14

*Gucci America, Inc. v. Li*,
    768 F.3d 122 (2d Cir. 2014) .................................................................................12, 21

*Gundlach v. IBM Japan, Ltd.*,
    983 F. Supp. 2d 389 (S.D.N.Y. 2013) .........................................................15, 16, 18

*Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*,
    808 F. Supp. 2d 552 (S.D.N.Y. 2011) ........................................................................24

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ....................................................................................17

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998) .................................................................................19, 20

*Johnson v. UBS AG*,
    2019 WL 5802323 (2d Cir. Nov. 7, 2019) ..................................................................13

*Kirschner v. CIHLP LLC*,
    2017 WL 4402545 (S.D.N.Y. Sept. 30, 2017) ...........................................................27

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
    2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017) ............................................................15

*Laydon v. Mizuho Bank, Ltd.*,
    2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ............................................................12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) .............................................................21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) .........................................................20, 31

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016) .............................................................33

# TABLE OF AUTHORITIES *(continued)*

Page(s)

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  299 F. Supp. 3d 430 (S.D.N.Y. 2018) ............................................................... 33

*Linde v. Arab Bank, PLC*,
  262 F.R.D. 136 (E.D.N.Y. 2009) ............................................................... 16, 18

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
  213 F. Supp. 3d 530 (S.D.N.Y. 2016) ............................................................... 34

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*,
  2004 WL 415251 (Del. Ch. Mar. 4, 2004) ............................................................... 29

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
  959 F. Supp. 2d 476 (S.D.N.Y. 2013) ............................................................... 3, 14, 15

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) ............................................................... 22

*Miller v. Mercuria Energy Trading, Inc.*,
  291 F. Supp. 3d 509 (S.D.N.Y. 2018) ............................................................... 10

*Minnie Rose LLC v. Yu*,
  2016 WL 1049020 (S.D.N.Y. Mar. 11, 2016) ............................................................... 3

*Mobil Oil Corp. v. Linear Films, Inc.*,
  718 F. Supp. 260 (D. Del. 1989) ............................................................... 28

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010) ............................................................... 7

*In re Nat. Gas Commodity Litig.*,
  337 F. Supp. 2d 498 (S.D.N.Y. 2004) ............................................................... 30

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
  975 F. Supp. 2d 392 (S.D.N.Y. 2013) ............................................................... 24, 25, 26, 27

*Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*,
  2004 WL 2199547 (S.D.N.Y. Sept. 29, 2004) ............................................................... 17

*NovelAire Techs., L.L.C. v. Munters AB*,
  2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013) ............................................................... 16, 18, 19

*Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*,
  685 A.2d 724 (Del. Super. Ct. 1996) ............................................................... 30

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Penguin Grp. (USA) Inc. v. Am. Buddha,*
   609 F.3d 30 (2d Cir. 2010).................................................................................6

*In re Platinum & Palladium Commodities Litig.,*
   828 F. Supp. 2d 588 (S.D.N.Y. 2011)..............................................................32

*Price v. L'Oreal USA, Inc.,*
   2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) ......................................................7

*Reers v. Deutsche Bahn AG,*
   320 F. Supp. 2d 140 (S.D.N.Y. 2004)..............................................................17

*Robinson v. Overseas Military Sales Corp.,*
   21 F.3d 502 (2d Cir. 1994)................................................................................6

*In re RSL COM PRIMECALL, Inc.,*
   2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003).....................................27

*In re S. African Apartheid Litig.,*
   617 F. Supp. 2d 228 (S.D.N.Y. 2009).........................................................31, 32

*SEC v. Jones,*
   476 F. Supp. 2d 374 (S.D.N.Y. 2007)..............................................................33

*SEC v. Straub,*
   921 F. Supp. 2d 244 (S.D.N.Y. 2013)..............................................................12

*Sikhs for Justice v. Nath,*
   893 F. Supp. 2d 598 (S.D.N.Y. 2012)..............................................................30

*Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.,*
   283 F.R.D. 142 (S.D.N.Y. 2012) .....................................................................25

*Spiegal v. Schulmann,*
   604 F.3d 72 (2d Cir. 2010)...............................................................................10

*SPV Osus Ltd. v. UBS AG,*
   114 F. Supp. 3d 161 (S.D.N.Y. 2015).....................................................6, 12, 13

*In re SSA Bonds Antitrust Litig.,*
   2018 WL 4118979 (S.D.N.Y. Aug. 28, 2018)..................................................33

*In re SSA Bonds Antitrust Litig.,*
   2019 WL 4917608 (S.D.N.Y. Oct. 4, 2019) .........................................8, 9, 10, 11

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Stutts v. De Dietrich Grp.*,
 465 F. Supp. 2d 156 (E.D.N.Y. 2006) ...................................................................18

*Trevino v. Merscorp, Inc.*,
 583 F. Supp. 2d 521 (D. Del. 2008).......................................................................29

*In re Tronox, Inc. Sec. Litig.*,
 769 F. Supp. 2d 202 (S.D.N.Y. 2011).....................................................................31

*United States v. Scophony Corp.*,
 333 U.S. 795, 68 S. Ct. 855 (1948).........................................................................8

*VFS Fin., Inc. v. Falcon Fifty LLC*,
 17 F. Supp. 3d 372 (S.D.N.Y. 2014).....................................................................28

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
 751 F.2d 117 (2d Cir. 1984)...................................................................................15

*Walden v. Fiore*,
 571 U.S. 277, 134 S. Ct. 1115 (2014).......................................................12, 13, 14

*Waldman v. Palestine Liberation Org.*,
 835 F.3d 317 (2d Cir. 2016).......................................................................7, 12, 13

*Whiteman v. Fed. Republic of Austria*,
 2002 WL 31368236 (S.D.N.Y. Oct. 21, 2002) .........................................................9

*Wilder v. News Corp.*,
 2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ...........................................................21

*Wiwa v. Royal Dutch Petroleum Co.*,
 226 F.3d 88 (2d Cir. 2000).................................................................................9, 10

*Ziegler, Ziegler & Assocs. LLP v. China Digital Media Corp.*,
 2010 WL 2835567 (S.D.N.Y. July 13, 2010) .........................................................11

**Statutes**

7 U.S.C. § 2.........................................................................................................................30

15 U.S.C. § 1, *et seq.*...............................................................................................7, 8, 30, 33

Cal. Bus. & Prof. Code § 17200, *et seq.* ..................................................................4, 33

N.Y. C.P.L.R. § 302............................................................................................................10

# I.      INTRODUCTION

Plaintiff is suing one U.S. company, TOTAL Gas & Power North America, Inc. ("TGPNA"), and two affiliated foreign companies:  TOTAL S.A. and TOTAL Gas & Power Ltd. ("TGPL") (together, the "Foreign Defendants").  TGPNA's previously filed Motion to Dismiss explains the many reasons Plaintiff lacks standing and fails to state any viable claim.  *See* Dkt. 27. The Foreign Defendants join that motion in full, because their asserted liability is entirely derivative of the asserted liability of TGPNA, whose employees engaged in the trades at issue in each of Plaintiff's claims.  The Foreign Defendants separately move to dismiss here because— regardless of the disposition of claims against TGPNA—TOTAL S.A. and TGPL are distinct foreign entities that simply do not belong in this litigation.[1]

First, this Court lacks personal jurisdiction over the Foreign Defendants.  TOTAL S.A. is incorporated and headquartered in France, and TGPL is incorporated and headquartered in the United Kingdom.  Neither resides, nor transacts any substantial business, in either the United States as a whole or New York specifically.  That alone defeats personal jurisdiction under the Clayton Act, which governs Plaintiff's only federal law claims.  Separately, haling either Foreign Defendant into this Court would offend due process under the Constitution.  Each is only at home abroad, which defeats general jurisdiction, and neither has claim-related ties sufficient to invoke specific jurisdiction.  Nor can Plaintiff evade those requirements with its spurious alter-ego and agency theories.

Second, the Complaint fails to state a claim against either Foreign Defendant.  Plaintiff rests its case entirely on natural gas trading in the southwestern U.S., conducted by a small number

---

[1]   The Foreign Defendants hereby incorporate by reference TGPNA's motions to strike and dismiss, filed November 22, 2019, as if fully set forth at length herein.  *See* Dkts. 25 & 27.

of TGPNA employees in Texas.  Not once does the Complaint accuse any employee of TOTAL S.A. or TGPL of participating in the challenged trading or otherwise being involved in the alleged wrongdoing.

Plaintiff proposes to avoid that problem by attributing to the Foreign Defendants the actions of TGPNA employees.  But TOTAL S.A. (the indirect parent of TGPNA) and TGPL (a horizontal affiliate with no ownership interest in TGPNA) are separate entities, as is TGPNA.  All three have operated that way for years, properly observing the requirements for corporate separateness, as other courts have ruled.  At bottom, Plaintiff wants the Court to ignore this separateness for the sole improper purpose of getting Plaintiff access to more—and possibly deeper—pockets.

For these and other reasons, including those in the Foreign Defendants' accompanying Motion to Strike and in TGPNA's motion papers, all claims against TOTAL S.A. and TGPL should be dismissed with prejudice.

## II.     BACKGROUND

### A.     The Parties

TGPNA's motion to dismiss provides a detailed summary of the facts overall.  *See* Dkt. 27. As relevant here, Plaintiff, the **City of Long Beach**, proposes to sue on behalf of a class of certain individuals and entities that held contracts which settled against Monthly Index Prices for natural gas at four regional hubs in the Southwest (known as SoCal, Permian, Waha, and San Juan) during specified months between July 2009 and July 2012. Compl. ¶ 131.  The gist of Plaintiff's federal antitrust and state law claims is that, on certain occasions, TGPNA traders allegedly manipulated those Monthly Index Prices.  *Id.* ¶ 1.  The Complaint does not assert even the most basic attributes of any of Plaintiff's own transactions, instead alleging only to have "purchased natural gas during the Class Period under pre-existing contracts" with an unnamed third party that "settled against the Monthly Index Price for natural gas delivered [at] . . . SoCal."  *Id.* ¶ 17.  Plaintiff does not

allege it engaged in any transactions, or had any other relationship, with any of the three Defendants.

Defendant **TGPNA** is incorporated in Delaware and headquartered in Texas.  Compl. ¶ 18.  TGPNA trades in the physical and financial natural gas markets in the U.S., including the four southwestern hubs at issue in this action.  *Id.*

Defendant **TOTAL S.A.** is a publicly traded oil and gas company organized under the laws of, and headquartered in, France.  Compl. ¶ 19; Declaration of Thierry Reveau de Cyrières ("De Cyrières Decl.") ¶ 3.[2]  TOTAL S.A.'s subsidiaries and affiliates engage in many oil and gas industry activities, from exploration and production to refining, manufacture of petrochemicals, power generation, product trading, and the distribution of energy in various forms.  *See* De Cyrières Decl. ¶ 4.  TOTAL S.A. has never maintained a place of business, nor does it have offices, in New York or anywhere else in the U.S.  *Id.* ¶¶ 3, 7-9.  Likewise, all TOTAL S.A. employees are located outside of the U.S.  *Id.* ¶ 7.  TOTAL S.A. derives no revenue from any operations carried out by it in the United States.  *Id.* ¶ 8.

TOTAL S.A. is not an operating company.  *See* De Cyrières Decl. ¶ 5.  Rather, as another judge in this district concluded, "there is little doubt that [TOTAL S.A.] is a typical holding company."  *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 959 F. Supp. 2d 476, 492 (S.D.N.Y. 2013) ("*MTBE*") (dismissing claims against TOTAL S.A. on a motion to dismiss for lack of personal jurisdiction); De Cyrières Decl. ¶ 5.  TOTAL S.A. is the ultimate corporate parent of TGPNA, with three other layers of corporate entities in between.  *See* De Cyrières Decl.

---

[2]   The Court may rely on materials outside the Complaint in deciding personal jurisdiction.  *See, e.g.*, *Minnie Rose LLC v. Yu*, 2016 WL 1049020, at *1 n.1 (S.D.N.Y. Mar. 11, 2016).  Additionally, the Court may consider all "matters of which judicial notice may be taken" when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

¶ 10; Declaration of Christopher Gillies ("Gillies Decl.") ¶ 3.  TGPNA is one of more than a thousand direct and indirect TOTAL S.A. subsidiaries worldwide.  *See* De Cyrières Decl. ¶¶ 4, 7.

Defendant **TGPL** is organized under the laws of, and headquartered in, the United Kingdom.  Declaration of Simon Binet ("Binet Decl.") ¶ 4.  TGPL has never maintained a place of business in the United States and has no offices here.  *Id.* ¶ 5.  It has no employees in New York. *Id.*  As for the U.S. as a whole, in any given year, TGPL may have just one or two employees here under secondment.  *Id.* ¶¶ 6-7.[3]  Since 2008, more than 99% of TGPL's revenue has come from non-U.S. sources. *Id.* ¶ 8.  TGPL is one of TOTAL S.A.'s many indirect subsidiaries, with multiple layers of companies in between them.  *Id.* ¶ 3.  TGPL is only horizontally affiliated with, and has no ownership interest in, TGPNA.  *Id.*

### B.    Plaintiff Seeks to Hold the Foreign Defendants Liable for TGPNA's Purported Conduct.

As discussed more fully in TGPNA's motions to strike and dismiss, Dkts. 25 & 27, Plaintiff relies almost exclusively on preliminary, unadjudicated assertions made in 2015 and 2016 by enforcement staff at the Federal Energy Regulatory Commission ("FERC") that TGPNA periodically engaged in "bidweek" trading activity "to impact the Monthly Index Price[s]" at the four regional trading hubs in order "to benefit TGPNA's related financial positions that settled against those indices."  Compl. ¶ 35; *see also* Dkt. 25 at 2-4; Dkt. 27 at 16.  Four of the Complaint's five counts are made against TGPNA alone:  two federal antitrust claims (monopolization and attempted monopolization under the Sherman Act) and two state law claims (California Business

---

[3]  A few TGPL employees are, from time to time, seconded to other TOTAL S.A. subsidiaries.  Under the arrangements for such secondments, the secondee reports directly to the management of the hosting subsidiary.  Binet Decl. ¶¶ 6-7.

& Professional Code § 17200, *et seq.* ("Unfair Competition Law" or "UCL"), and unjust enrichment).

The Foreign Defendants are named only in Count V, which is entitled "Total S.A.'s and Total Gas & Power, Ltd.'s Liability for TGPNA's Conduct."  While that label suggests derivative liability for supposed misconduct by TGPNA, the claim itself mainly asserts *direct* liability:  *i.e.*, the Foreign Defendants supposedly used TGPNA so that *they* could violate the law.  In particular, Plaintiff asserts broadly that "Total [S.A.] and TGPL controlled TGPNA and used their control of TGPNA to engage in illegal market manipulation" in the United States "for their benefit."  Compl. ¶ 161; *see also id.* ("Total [S.A.] and TGPL controlled TGPNA and *used it to commit acts* that sought to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or to otherwise evade the law." (emphasis added)).  But the Complaint identifies not one person at either Foreign Defendant who supposedly was responsible for, or took any part in, these unspecified acts of control over the alleged misconduct.

In addition to asserting that TOTAL S.A. and TGPL were themselves wrongdoers, Plaintiff asserts even more broadly that the two foreign entities are liable, derivatively, for *anything* TGPNA has ever done, in that all three entities are (and at all times were) supposedly simply "operat[ing] as a single economic entity."  Compl. ¶ 160.  Plaintiff asserts that "TGPNA is a mere instrumentality or alter ego of TGPL and Total [S.A.], and TGPL is a mere instrumentality or alter ego of Total [S.A.]."  *Id.*  The theory here is that TOTAL S.A. and TGPL "exercised exclusive domination and control over TGPNA to the point that TGPNA had no legal or independent significance of its own."  *Id.*  These conclusory assertions and legal conclusions are unadorned by proper factual allegations or any other specifics.

5

### III.   LEGAL STANDARD

*Personal Jurisdiction.*   Under Rule 12(b)(2), the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).   "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Id.* at 34-35 (citation and internal quotation marks omitted).   This *prima facie* showing "must include an averment of facts that, if credited by" the trier of fact, "would suffice to establish jurisdiction over the defendant."   *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citation and internal quotation marks omitted).   The Court does not "draw argumentative inferences in the plaintiff's favor," though, *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (citation and internal quotation marks omitted), and "conclusory non-fact-specific jurisdictional allegations . . . will not establish a *prima facie* showing of jurisdiction," *SPV Osus Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (citation omitted).

*Failure to State a Claim*.   To survive dismissal under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).   A complaint must contain more than "conclusory statements" or "naked assertions devoid of further factual enhancement." *Id.* (quotation marks, alteration, and citation omitted).   And when a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).   Additionally, because the Complaint, including, *inter alia*, its allegations that the Foreign Defendants used TGPNA "to perpetuate fraud," ¶ 161, sounds in fraud,

Plaintiff's claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Price v. L'Oreal USA, Inc.*, 2017 WL 4480887, at *3 (S.D.N.Y. Oct. 5, 2017) ("Rule 9(b)'s pleading requirements apply when there are factual allegations of fraud regardless of the cause of action.") (citing *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010)).

## IV.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over Either Foreign Defendant.

"To exercise personal jurisdiction lawfully, three requirements must be met.  First, the plaintiff's service of process upon the defendant must have been procedurally proper.  Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective. . . .  Third, the exercise of personal jurisdiction must comport with constitutional due process principles."  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (citation and internal quotation marks omitted; ellipses in original).  Plaintiff fails these requirements.

#### 1.    The Statutory Bases for Exercising Personal Jurisdiction Over the Foreign Defendants Are Lacking.

Plaintiff does not meet the statutory requirements for personal jurisdiction.  Plaintiff must look to Section 12 of the Clayton Act for the private right of action needed to assert its only two federal claims:  alleged violations of the Sherman Act (Counts I and II).  Section 12 was Plaintiff's source of authority for serving process on TOTAL S.A. and TGPL, because it allows a corporation to be served "wherever it may be found."  15 U.S.C. § 22.  But worldwide service comes with a catch.  According to the Second Circuit "the plain language of Section 12 indicates that it[] . . . establishes personal jurisdiction[] only in cases in which its venue provision is satisfied."  *Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408, 423 (2d Cir. 2005).  And, under the venue

language of Section 12, a "suit, action, or proceeding under the antitrust laws against a corporation may be brought" only in "the judicial district" (1) where the corporation "is an inhabitant"; (2) "wherein it may be found"; or (3) wherein it "transacts business." 15 U.S.C. § 22. Neither TOTAL S.A. nor TGPL meets any of the three venue requirements needed to establish personal jurisdiction for Plaintiff's federal claims.

First, neither Foreign Defendant is an inhabitant of this district. As noted already, they are incorporated abroad. *See In re SSA Bonds Antitrust Litig.*, 2019 WL 4917608, at *4 & n.4 (S.D.N.Y. Oct. 4, 2019) ("For a corporation, 'inhabitant' means its place of incorporation."); *Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 711 F. Supp. 730, 732-33 (S.D.N.Y. 1989) (same). Second, they are not "found" in this District; Plaintiff instead needed to effect service on them abroad through the Hague Convention.[4] *See SSA Bonds*, 2019 WL 4917608, at *4 & n.5 (explaining that "to be found" in a district "requires more than 'transacting business' there"; instead there must be "proof of continuous local activities" (citation omitted)).

Plaintiff thus must show that each Foreign Defendant "transacts business" in this District. They do not. The phrase "transacts business" in the Clayton Act means conducting "practical, everyday business or . . . doing or carrying on business of a[] substantial character." *United States v. Scophony Corp.*, 333 U.S. 795, 807, 68 S. Ct. 855, 862 (1948) (internal quotation marks omitted).[5] There must be "some amount of business continuity and certainly more than a few

---

[4]   TGPL was served in the United Kingdom under that Convention in November 2019. To promote judicial efficiency, TOTAL S.A. agreed not to wait for Plaintiff to complete its service on TOTAL S.A. in France. Instead, the parties agreed to proceed as if such service had been effected, under the condition that TOTAL S.A. would not waive any right to contest jurisdiction. *See* Dkt. 32. Plaintiff ultimately effected service on TOTAL S.A. in France under the Hague Convention on January 29, 2020.

[5]   The Second Circuit has explained that "the determination whether a defendant transacted business in a district depend[s] on a realistic assessment of the nature of the defendant's business." *Daniel*, 428 F.3d at 429.

isolated and peripheral contacts with the particular judicial district." *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 199 (S.D.N.Y. 2018).  Courts have also rejected vague assertions that a defendant transacts in-forum business without "allegations of specific activities."  *SSA Bonds*, 2019 WL 4917608, at *5.

The Complaint fails to allege the requisite level of activities, much less with the needed specificity.  Plaintiff asserts that the Foreign Defendants "regularly transact business in the United States and in this District, including but not limited to, . . . their management and control of . . . TGPNA."  Compl. at ¶ 16.  But "[a]llegations that certain . . . defendants are parent companies of subsidiaries that transact business in New York do not suffice to show that the parent companies transact business in New York."  *Dennis*, 343 F. Supp. 3d at 199.[6]

Plaintiff further alleges that TOTAL S.A. sells American Depositary Receipts ("ADRs"), makes filings with the Securities and Exchange Commission ("SEC"), and had an investor relations office in New York.  Compl. at ¶ 16.  These also fail the "transacts business" test.  "[P]revailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings (such as making SEC filings and designating a depository for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences."  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000) (applying similar business transaction requirement under New York's Long-Arm Statute); *Whiteman v. Fed. Republic of Austria*, 2002 WL 31368236, at *6 (S.D.N.Y. Oct. 21, 2002) (same) ("[A] foreign corporation is not doing business in New York merely by taking ancillary steps in support of its listing on a New York exchange." (internal

---

[6]  Even as to TGPNA, Plaintiff has not sustained the required allegation of doing business in this District.  In fact, Plaintiff alleges little more than that TGPNA traded on the New York Mercantile Exchange ("NYMEX") and/or traded "instruments that settled against . . . NYMEX determined prices."  Compl. ¶ 15.

quotation marks omitted)).  And when it comes to TGPL, Plaintiff alleges nothing at all about supposed New York business transactions.  These "minimal allegations"—indeed, Plaintiff's utter failure to "allege . . . specific activities" with respect to TOTAL S.A. and TGPL—fail to "sufficiently allege venue for purposes of [Clayton Act] Section 12," and accordingly fail to establish the requirements for exercising personal jurisdiction over either Foreign Defendant on the federal law claims.  *Dennis*, 343 F. Supp. at 200.

These failures also doom Plaintiff's efforts to establish personal jurisdiction over the Foreign Defendants in connection with the two state law claims.  For such claims, "[a] district court's personal jurisdiction is determined by the law of the state in which the court is located." *Spiegal v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010).  New York's Long-Arm Statute has a transacts-business requirement, similar to that in Section 12.  *See* N.Y. C.P.L.R. § 302(a)(1).  Not only do the asserted New York activities fail such a test, for the reasons already stated, New York law requires even more:  proof that "the underlying lawsuit arose from the transacted business." *SSA Bonds*, 2019 WL 4917608 at *6; *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (finding that to support jurisdiction under N.Y. C.P.L.R. § 302, there must be "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York").  None of Plaintiff's asserted business transactions in New York (SEC filings, ADR issuances, or an investor relations office) has any nexus to the trading at four regional hubs in the Southwest.  *See Wiwa*, 226 F.3d at 97 (explaining that, without more, "activities necessary to maintain a stock exchange listing," such as an investor relations office, "are insufficient to confer jurisdiction" under the Long-Arm Statute); *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 522 n.5 (S.D.N.Y. 2018) ("The only connection that either defendant has to New York is Phoenix Global's ADRs.  This contact is not enough, standing alone,

to confer jurisdiction."); *Ziegler, Ziegler & Assocs. LLP v. China Digital Media Corp.*, 2010 WL 2835567, at *4 (S.D.N.Y. July 13, 2010) ("Such contacts stemming from legal or logistical requirements incumbent upon corporations that list their shares on New York stock exchanges are insufficient" to find the corporation was doing business in the state "when they are the defendant's only contacts with the forum state." (internal quotation marks omitted)); *Fowble v. Chesapeake & O. Ry. Co.*, 16 F.2d 504, 505 (S.D.N.Y. 1926) (explaining a corporation's maintenance of an office to support a company's bond listings cannot be used to find the corporation is doing business in New York).

Plaintiff's inability to satisfy the statutory requirements for exercising personal jurisdiction over the Foreign Defendants requires dismissal as to all of Plaintiff's claims.

### 2.    The Constitutional Requirements for Exercising Personal Jurisdiction Over the Foreign Defendants Are Lacking.

Plaintiff also fails the constitutional requirements for personal jurisdiction.  For due process purposes, "[t]here are two types of personal jurisdiction:  general jurisdiction and specific jurisdiction." *SSA Bonds*, 2019 WL 4917608, at *8.   The Supreme Court has made clear that "only a limited set of affiliations with a forum will render a defendant amenable to" general or "all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760 (2014).  In fact, "[i]t by now is well established that a court may assert general jurisdiction over foreign . . . corporations" only "in a state that is the company's formal place of incorporation or its principal place of business." *Dennis*, 343 F. Supp. 3d at 202.  Because neither TOTAL S.A. nor TGPL is incorporated or maintains its principal place of business in New York, or anywhere else in the United States, general jurisdiction is lacking. *See id.*

Plaintiff also cannot establish specific jurisdiction over the Foreign Defendants.  To resolve this question, "the court must decide if the defendant has purposefully directed his activities at . . .

11

the forum and [if] the litigation . . . arise[s] out of or relate[s] to those activities." *Gucci America, Inc. v. Li*, 768 F.3d 122, 136 (2d Cir. 2014) (internal quotation marks omitted).[7]  Critically, "the defendant's suit-related conduct must create a substantial connection with the forum." *Waldman*, 835 F.3d at 335 (quoting *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 1121 (2014)).  "A defendant's general connections with the forum are not enough to support the exercise of specific jurisdiction." *SPV Osus*, 882 F.3d at 344 (internal quotation marks omitted).  And "[w]here the defendant has had only limited contacts with the [forum,] it may be appropriate to say that he will be subject to suit in that [forum] only if the plaintiff's injury was proximately caused by those contacts." *Id.* (declining to exercise specific jurisdiction over foreign defendants because "connections" to the forum were "too tenuous").

Plaintiff fails these requirements.  The only allegations that TOTAL S.A. or TGPL engaged in any in-forum conduct can be easily summarized as general assertions that TOTAL S.A. and TGPL were involved at various times in aspects of TGPNA's operations or management.  *See* Compl. ¶¶ 16, 125.  But even if true, Plaintiff does not even try to tie its suit-related conduct (the trading at four regional hubs) to any of these alleged contacts.  In the absence of the extreme level of proof needed to pierce a corporate veil (as discussed below), a parent company's interactions with a subsidiary are not enough.  *See Laydon v. Mizuho Bank, Ltd.*, 2015 WL 1515358, at *5

---

[7]  This Court has held that the relevant forum for analyzing specific jurisdiction with respect to federal antitrust claims is the United States as a whole.  *See Dennis*, 343 F. Supp. 3d at 201-02 (applying the "nationwide contacts approach").  That is an open issue in this Circuit.  *Gucci*, 768 F.3d at 142 n.21 (noting that the Second Circuit "has not yet decided" whether the appropriate forum is the United States for the purposes of specific jurisdiction where a federal statute provides for nationwide service).  Rather than repeat arguments this Court has already rejected, the Foreign Defendants preserve this issue for resolution by the Second Circuit, if ever needed.  That need should not arise, though, because no matter which forum is used—New York or the United States—the Complaint provides an insufficient basis for the Court to exercise specific jurisdiction over TOTAL S.A. or TGPL.  For the purposes of Plaintiff's state law claims, the relevant forum is New York.  *SEC v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013) (explaining that, in general, "there is no question that the . . . contacts in question are those with the forum state").

(S.D.N.Y. Mar. 31, 2015) (declining to exercise specific jurisdiction where defendant had "no connection to the United States except any connection that arguably can be imputed to it from its subsidiaries"); *see also Walden*, 571 U.S. at 284-85, 134 S. Ct. at 1122 (a defendant's relationship with the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum" and "not . . . with persons who reside there").  Noticeably absent from the Complaint are any factual allegations tying any person at TOTAL S.A. or TGPL to the natural gas trading giving rise to this litigation.  Indeed, the very paragraph intended to explain the basis for personal jurisdiction over the Foreign Defendants does not contain a single example of in-forum conduct purportedly causing the alleged injuries.  *See* Comp. ¶ 16; *see also SPV Osus*, 882 F.3d at 344 (declining to exercise specific jurisdiction where the complaint did not tie the injuries alleged to the non-resident defendants' own in-forum conduct).

The Complaint does not allege that TOTAL S.A. or TGPL traded natural gas in the United States, much less at the four relevant regional hubs.  Nor does the Complaint allege that the Foreign Defendants developed or participated in the allegedly improper bidweek trading strategy, or even that they were contemporaneously aware of those trades by TGPNA.  In fact, the Complaint alleges that TOTAL S.A. and TGPL learned of a potential issue, as reported by a supposed whistle-blower, only after the fact.  *See* Compl. ¶ 96.  That allegation serves to further divorce the Foreign Defendants from the alleged misconduct and contradicts the notion of "suit-related" in-forum conduct by TOTAL S.A. or TGPL.  *Waldman*, 835 F.3d at 335; *Johnson v. UBS AG*, 2019 WL 5802323, at *2 (2d Cir. Nov. 7, 2019) ("[The] Court typically requires that the plaintiff show some sort of causal relationship between a defendant's U.S. contacts and *the episode in suit*, and *the plaintiff's claim* must in some way arise from the defendants' purposeful contacts with the forum." (emphases in original)).

13

Here, Plaintiff has failed to allege, as it must, a substantial "relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284; *see also, e.g.*, *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 3600425, at *5-7 (S.D.N.Y. Aug. 18, 2017) (finding foreign defendants' alleged in-forum conduct not sufficiently "suit-related" where plaintiff did not "allege specific facts" suggesting the foreign defendants had themselves entered into U.S. "transactions [that] had a nexus to the . . . manipulation at issue in th[e] lawsuit"). In fact, TOTAL S.A. has never "conducted any natural gas trading activities in the United States," and neither Foreign Defendant "conduct[ed] any of the natural gas trading activities in the United States giving rise to this litigation." De Cyrières Decl. ¶ 9; Binet Decl. ¶ 10. Because the Complaint does not, and cannot, allege that TOTAL S.A. or TGPL had any substantial contact with the United States, let alone contact with a nexus to this action, the Court lacks specific jurisdiction over either entity, and the suit should be dismissed. *See, e.g.*, *MTBE*, 959 F. Supp. 2d at 491-92 ("Because Total [S.A.] is a holding company that has never operated in [the forum] or participated directly in the [relevant] market, [the court] lacks personal jurisdiction over it with respect to the claims alleged.").

### 3. Jurisdiction Over the Foreign Defendants Cannot Be Manufactured Through TGPNA's Alleged Contacts.

With no basis to claim that the Court may exercise personal jurisdiction over TOTAL S.A. or TGPL, Plaintiff attempts to obscure the legal separateness of TGPNA and the Foreign Defendants. The Court should reject these strained efforts to set aside established corporate law by pulling TOTAL S.A. and TGPL into litigation to which they do not belong.

#### a) TGPNA's Contacts Cannot Be Imputed to the Foreign Defendants Because Plaintiff Has Not Made The Requisite Showing That Either Controls TGPNA or Is Its Alter Ego.

Courts have time and again rejected efforts—including efforts specific to TOTAL S.A.—

14

to ignore the corporate form by mischaracterizing affiliates as a single entity.  *See, e.g.*, *Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001) (declining to exercise jurisdiction over TOTAL S.A. based on an alter-ego theory because plaintiffs "could not[] seriously contend that Total [S.A.] is the alter ego of its . . . operating subsidiaries in the United States"); *MTBE*, 959 F. Supp. 2d at 493 n.147 ("[T]here is no reason to disregard the separate corporate forms of Total [S.A.] and its subsidiaries.").  These cases enforce the rule that a foreign corporation cannot be subject to the jurisdiction of U.S. courts solely through a local subsidiary's in-forum contacts, unless the parent's control of the subsidiary "extends far beyond mere ownership," so much so that the local entity is reduced to a "mere department" of the foreign corporation.  *Gundlach v. IBM Japan, Ltd*., 983 F. Supp. 2d 389, 394-95 (S.D.N.Y. 2013) (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp*., 751 F.2d 117, 120 (2d Cir. 1984)); *see also Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980) ("[E]ven if the parent is sole owner of [a] subsidiary," "[t]here is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary.").

    In determining whether a parent controls a subsidiary to this extreme degree, courts evaluate four factors: "(1) nearly identical ownership interests; (2) financial dependency of the subsidiary on the parent corporation; (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (4) the degree of control over the marketing and operational policies of the subsidiary exercised by the parent."  *Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd*., 2017 WL 1113080, at *6 (S.D.N.Y. Mar. 10, 2017).  Applying these factors, it is clear that TGPNA is not a "mere department" or "alter ego" of TOTAL S.A. or TGPL.

The fact that TGPNA is an indirect, wholly-owned subsidiary of TOTAL S.A., Compl. ¶ 18; Gillies Decl. ¶ 3, is insufficient to establish control or to confer jurisdiction over the Foreign Defendants. *See Gundlach*, 983 F. Supp. 2d at 395, 398 (U.S. subsidiary not a "mere department" even where "the parties do not dispute that [the first factor] is met"). Wholly owned subsidiaries are ubiquitous in the universe of large multinational corporations. Thus, "[t]he first factor— common ownership between the parent and subsidiary—is perhaps better characterized as a prerequisite to the assertion of jurisdiction over a foreign related corporation by a New York court. Such facts are not enough on their own to establish jurisdiction." *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 143 (E.D.N.Y. 2009) (internal citations omitted).

Under the second factor—financial dependence—Plaintiff "must show that the subsidiary cannot run its businesses without the financial backing of its parent." *Am. Lecithin Co. v. Rebmann*, 2017 WL 4402535, at *7 (S.D.N.Y. Sept. 30, 2017) (internal quotation marks omitted). But TGPNA is a financially independent company that does not rely on either TOTAL S.A. (its ultimate parent) or TGPL (its horizontal affiliate) for such needs. *See* Gillies Decl. ¶ 5. TGPNA maintains its own balance sheet and pays its own business expenses, including its employees' salaries. *Id.* And Plaintiff acknowledges that TGPNA itself netted nearly $10 million in profit in 2014 alone. *See* Compl. ¶ 124. Moreover, even if the Court were to credit Plaintiff's allegation that "TGPNA frequently relied on parent company guarantees in establishing credit relationships in its trading business," Compl. ¶ 125, Plaintiff still would fail to demonstrate the kind of financial dependence necessary to conclude that TGPNA was a "mere department" of TOTAL S.A. *See Am. Lecithin Co.*, 2017 WL 4402535, at *7 (allegations that parent "guaranteed obligations to its subsidiaries" insufficient to establish dependence); *NovelAire Techs., L.L.C. v. Munters AB*, 2013 WL 6182938, at *6 (S.D.N.Y. Nov. 21, 2013) ("[A] finding of financial dependency requires a

showing that the subsidiary would be unable to function without the financial support of the parent.").

Nor does Plaintiff's allegation that "Total [S.A.] established risk limits for TGPNA's traders," Compl. ¶ 125, demonstrate financial dependency or otherwise show that TGPNA was a "mere department" of TOTAL S.A.  Putting aside that TOTAL S.A. sets risk limits for all products traded across TOTAL S.A.'s thousand-plus subsidiaries, not just those traded by the relevant TGPNA trading unit, *see* Dkt. 28-3 (TGPNA's FERC Answer) at 106, a corporate parent's promulgation of financial policies for its subsidiaries is insufficient as a matter of law for a finding of financial dependence, *see Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 157 (S.D.N.Y. 2004) (no financial dependence where parent had "control over the broad financial policies of its subsidiaries"); *see also Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) ("[A] parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is consistent with the parent's investor status."); *Unocal*, 248 F.3d at 927 (rejecting alter-ego theory of personal jurisdiction over TOTAL S.A. because "[a] parent corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego").   Risk limits in particular do not create financial dependency; if anything, they do just the opposite.  In any event, "it is perfectly appropriate for a parent corporation to urge companies it owns to achieve its strategic and financial goals: that is, in fact, the purpose behind owning a portfolio of companies."  *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, 2004 WL 2199547, at *12 (S.D.N.Y. Sept. 29, 2004) (holding court lacked personal jurisdiction over foreign parent).

As for the third and fourth factors, TGPNA has consistently maintained corporate formalities as a separate company.  TGPNA has its own board of directors, which meets independently, maintains its own minutes, and is responsible for overseeing the company, including the selection and approval of TGPNA's officers.  Gillies Decl. ¶ 7; *see also, e.g.*, *Linde*, 262 F.R.D. at 143; *Gundlach*, 983 F. Supp. 2d at 396-97.  TGPNA also maintains its own corporate books and records, including its own general ledger and corporate by-laws.  Gillies Decl. ¶ 6; *see also, e.g.*, *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 163-65 (E.D.N.Y. 2006) (subsidiary was not a "mere department" of parent where subsidiary "[kept] its own books and records, . . . and otherwise observe[d] all corporate formalities" (internal quotation marks omitted)).  Indeed, other courts have declined to exercise jurisdiction over TOTAL S.A. "[b]ecause Total [S.A.] and its subsidiaries observe all of the corporate formalities necessary to maintain corporate separateness."  *Unocal*, 248 F.3d at 928.

Furthermore, neither TOTAL S.A. nor TGPL controls TGPNA.  TGPNA instead operates independently day-to-day, as it did during the putative Class Period.  *See* De Cyrières Decl. ¶¶ 10-11; Binet Decl. ¶¶ 9, 12-13; Gillies Decl. ¶¶ 8-10; *Gundlach*, 983 F. Supp. 2d at 397-98 (finding subsidiary not a "mere department" where "[d]efendants submit[ted] an affidavit declaring that [the subsidiary] controls its own operations"); *NovelAire*, 2013 WL 6182938, at *9 (finding no control by parent where subsidiary "state[d] that it 'runs its own day-to-day affairs'").  During the Class Period, only TGPNA personnel (specifically, its Vice President of Trading) supervised the relevant trading.  *See* Gillies Decl. ¶ 9.  Plaintiff does not—nor could it truthfully—allege that TOTAL S.A. or TGPL had any input into the terms or pricing for the challenged trades, or any other involvement for that matter.  *See* De Cyrières Decl. ¶¶ 9-11; Binet Decl. ¶¶ 9-10, 12-13; Gillies Decl. ¶¶ 8-10; *see also, e.g.*, *Gundlach*, 983 F. Supp. 2d at 397 (no control over subsidiary

where it "sets its own prices, develops its own strategy . . ., and sells through its own . . . network"). TGPNA's internal management also was responsible during the relevant period for approving all hiring and termination of West Desk personnel and the organization of the West Desk's trading floor.  Gillies Decl. ¶ 9.  TGPNA's traders always acted on behalf of TGPNA only, not on behalf of TOTAL S.A. or TGPL, and TGPNA's traders were not required to discuss their trades with anyone at the other companies.  Gillies Decl. ¶¶ 8-10; De Cyrières Decl. ¶¶ 10-11; Binet Decl. ¶¶ 9, 12-13.  TGPNA also markets itself independently, as a distinct entity from TOTAL S.A. and TGPL, and did so during the putative Class Period.  Gillies Decl. ¶ 8.

        The above examples, and all other relevant factors, demonstrate that TGPNA is not a "mere department" or "alter ego" of the Foreign Defendants.  Plaintiff's inaccurate assertions of interconnectedness between TGPNA and the Foreign Defendants are also too conclusory.  *See, e.g.*, Compl. ¶ 11 (alleging the three companies "acted as a single unit during the relevant [three-year] period" for all purposes); *id.* ¶ 126 (alleging "these [three] entities did not act as independent corporations, but rather as a single profit-seeking enterprise" without specifying the scope of the enterprise or its duration).  And even where Plaintiff attempts to allege some specifics, those allegations do not suffice to satisfy the "mere department" standard, which "requires not just coordination and overlap" among related companies "but, 'pervasive control' of one company by the other."  *Arquest, Inc. v. Kimberly-Clark Worldwide, Inc.*, 2008 WL 2971775, at *10 (S.D.N.Y. July 31, 2008) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)); *see also NovelAire*, 2013 WL 6182938, at *7 (a showing of almost "complete" "day to day control by the parent" over the subsidiary is required "[t]o establish a breakdown of corporate formalities").  Because Plaintiff has not plausibly alleged that TOTAL S.A. or TGPL exercised "pervasive

control" over TGPNA, including the trading at issue here, there is no basis for asserting specific personal jurisdiction over the Foreign Defendants.

### b) TGPNA Was Not Acting as an Agent for the Foreign Defendants.

Plaintiff's agency theory for personal jurisdiction over the Foreign Defendants fails too. Among other things, TGPNA and its traders do not act, and did not act during the Class Period, as agents on behalf of TOTAL S.A. or TGPL. De Cyrières Decl. ¶¶ 10-11; Binet Decl. ¶¶ 9, 12-13; Gillies Decl. ¶¶ 8-10. The Complaint here is remarkably sparse: a single generic allegation that "TGPNA acted as agent for Total [S.A.] and TGPL in undertaking the . . . scheme" alleged in this lawsuit. Compl. ¶ 163. That conclusory assertion, unsupported by a single *factual* allegation, does not plausibly allege an agency relationship between the Foreign Defendants and TGPNA. *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227, 234-35 (S.D.N.Y. 2015) ("*Daimler* has foreclosed the establishment of jurisdiction [through agency] based only on generalized facts.").

To establish parent-subsidiary agency, a plaintiff (1) "must show that the subsidiary does all the business which the parent corporation could do were it here by its own officials," *Jazini*, 148 F.3d at 184 (internal quotation marks and alterations omitted), and (2) must allege that the parent "directed the specific activities that allegedly violated [the] . . . law," *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6696407, at *21 (S.D.N.Y. Nov. 3, 2015) ("*LIBOR V*"). Plaintiff does no such thing here. Instead, it offers bare allegations of an agency relationship, including sparse claims that, at a high level of generality, "Total [S.A.] and TGPL controlled TGPNA." Compl. ¶ 161. This is wholly insufficient to confer jurisdiction. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86 (2d Cir. 2018); *see also Jazini*, 148 F.3d at 185 (plaintiffs cannot substitute "legal conclusion[s] couched as a factual allegation" for the "factual specificity

necessary to confer jurisdiction").  Because none of Plaintiff's allegations plausibly establishes that either of the Foreign Defendants "exert[ed] pervasive control" over TGPNA—much less pervasive control over the small universe of bidweek trades in natural gas at the relevant regional hubs—Plaintiff does not satisfy the requirements for pleading agency jurisdiction.  *Wilder v. News Corp.*, 2015 WL 5853763, at *6 (S.D.N.Y. Oct. 7, 2015).

### 4.    Considerations of Fair Play, Substantial Justice, and International Comity Also Require Dismissal.

In addition to Plaintiff's inability to satisfy the "contacts-based" due process requirements, asserting personal jurisdiction over the Foreign Defendants would fail to "comport with fair play and substantial justice." *Gucci*, 768 F.3d at 137.  To determine whether the exercise of personal jurisdiction is consistent with "fair play and substantial justice," courts consider "the burden that the exercise of jurisdiction will impose on the defendant." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526, at *28 (S.D.N.Y. Oct. 20, 2015) (citation omitted).  Courts also consider factors including "the interests of the forum state in adjudicating the case," *id.* (citation omitted), and whether exercising jurisdiction threatens "international rapport," *Daimler*, 571 U.S. at 142, 134 S. Ct. at 763; *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ("[C]onstitutional due process principles generally restrict the power of a state to endow its courts with personal jurisdiction over foreign corporate parties . . . with regard to matters not arising within the state.").

Those factors strongly militate against the assertion of jurisdiction over the Foreign Defendants here.  Haling TOTAL S.A. and TGPL into court in New York—or anywhere in the U.S.—on the basis of non-New York conduct by a corporate affiliate threatens international rapport and comity between the courts of the U.S. and the tribunals of their respective countries. *See, e.g.*, *Daimler*, 571 U.S. at 140, 134 S. Ct. at 763 ("In the European Union, . . . a corporation

may generally be sued [only] in the nation in which it is 'domiciled.'").[8]  Requiring the Foreign Defendants to litigate in this forum also places a heavy strain and undue burden on them, especially as all of their potentially relevant witnesses and documents are located overseas.  *See* De Cyrières Decl. ¶ 13; Binet Decl. ¶ 14.

More than "merely be[ing] inconvenient," subjecting the Foreign Defendants to jurisdiction under these circumstances "would violate our basic sense of 'fair play and substantial justice'—and deprive the[se] defendants of the due process guaranteed by the Constitution." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 575 (2d Cir. 1996).

### B.       Plaintiff Fails to State a Claim Against TOTAL S.A. or TGPL.

Putting aside the lack of a lawful basis for exercising personal jurisdiction over the Foreign Defendants, Plaintiff has failed to state a claim against either of them.

### 1.       Plaintiff Does Not State a Claim for Direct Liability.

Count V of the Complaint grounds the single claim against TOTAL S.A. and TGPL in TGPNA's alleged conduct.  *See* Compl. Count V ("Total S.A.'s and Total Gas & Power, Ltd.'s Liability for TGPNA's Conduct").  As noted earlier, Plaintiff is of two minds here.  As an initial matter, it states that TOTAL S.A. and TGPL are the principal wrongdoers.  "Total [S.A.] and TGPL controlled TGPNA and used their control," says Plaintiff, "to engage in illegal market manipulation in the United States . . . for their benefit."  *Id.* ¶ 161; *id.* ("Total [S.A.] and TGPL controlled TGPNA and used it to commit acts that sought to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or to otherwise evade the law.").

---

[8]   Not only did the Foreign Defendants lack any connection to the U.S.-based conduct challenged here, New York in particular has no significant interest in litigation brought by a California municipality against French and English corporations, based on decade-old conduct in the Southwest, by employees of an affiliate, that allegedly affected the price of natural gas bought and sold in Texas, California, and New Mexico.

This conclusory assertion of direct liability is backed by nothing remotely close to an allegation sufficient to state a claim.  In fact, it conflicts with the remainder of the Complaint, which exclusively attributes TGPNA's bidweek trading strategy to TGPNA employees themselves. *See, e.g.*, *id.* ¶¶ 22-23 (TGPNA employee "Tran, with Hall," also a TGPNA employee, "were the primary actors who implemented and supervised the manipulative scheme described herein . . . and others at the [d]esk acted pursuant to Hall's and/or Tran's directives to implement the manipulative scheme."); *id.* ¶ 39 ("The . . . scheme was perpetrated on behalf of TGPNA by its West Desk."); *id.* ¶¶ 43-47.  Notably, the Complaint nowhere alleges that anyone at TOTAL S.A. or TGPL ever directed, requested, participated in, or even contemporaneously knew about, the allegedly improper natural gas trading at four southwestern U.S. regional hubs that is at issue in this litigation.[9]  Making this theory even less plausible, Plaintiff's Opposition to TGPNA's Motion to Dismiss asserts that the TGPNA traders went to "great lengths" to keep their conduct a secret, to the point that it "was not even readily detectible within the company."  Dkt. 37 at 26 (adding that the "anticompetitive bidweek strategy was a 'very sensitive subject' and not openly discussed even on the trading desk").  As such, Plaintiff does not, and cannot, allege that the Foreign Defendants intended to engage in any market manipulation or other misconduct, much less any monopolization for the purposes of a Sherman Act claim or related conduct for the state law claims.  Plaintiff fails to state a claim.

## 2. Plaintiff Does Not State a Claim for Derivative Liability Based on the Alleged Conduct of TGPNA.

Plaintiff further seeks to attribute alleged wrongdoing by TGPNA traders to TOTAL S.A.

---

[9]  To the contrary, the Complaint is limited on this topic to a single allegation that TOTAL S.A. and TGPL personnel at one point *learned of* information that supposedly should have *alerted them* to an aspect of the alleged conduct:  TGPNA's "high market share at several trading points."  Compl. ¶ 92.

and TGPL.  These efforts to disregard the corporate form, or otherwise establish derivative liability, are misplaced.  "[A] corporate parent is not automatically liable for the acts of its wholly owned subsidiary."  *Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 560 (S.D.N.Y. 2011); *see also In re Alstom SA*, 406 F. Supp. 2d 433, 469 (S.D.N.Y. 2005) (corporate parent not liable for the actions of its subsidiary on the basis of the parent-subsidiary relationship).  And to achieve "the extraordinary remedy of piercing the corporate veil," *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc*., 716 F. App'x 23, 28 (2d Cir. 2017), Plaintiff must plausibly allege that TGPNA was a sham entity that served only as an alter ego of the Foreign Defendants.  For reasons similar to those stated on the topic of personal jurisdiction, Plaintiff falls well short of the allegations needed to state a claim under this theory too.

### a) Plaintiff Fails to Plausibly Allege That TGPNA Is an Alter Ego or Mere Instrumentality of TOTAL S.A. or TGPL.

As noted earlier, Plaintiff seeks to hold the Foreign Defendants liable on the theory that "TGPNA is a mere instrumentality or alter ego of TGPL and Total [S.A.]."  Compl. ¶ 160.  But "[t]o prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the parent and the subsidiary operated as a single economic entity and (2) that an overall element of injustice or unfairness is present" that warrants piercing the corporate veil.[10]  *Fletcher v. Atex, Inc*., 68 F.3d 1451, 1457 (2d Cir. 1995) (alterations and internal quotation marks omitted); *see also, e.g.*, *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) ("To state a 'veil-piercing claim,' the plaintiff must

---

[10]   Although the choice of law on this issue does not alter the outcome, Delaware law applies because TGPNA is incorporated there.  Compl. ¶ 18; *see Fletcher*, 68 F.3d at 1456 ("[U]nder New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded. . . . Because [defendant] was a Delaware corporation, Delaware law determines whether the corporate veil can be pierced in this instance." (internal quotation marks and alterations omitted)); *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 401 (S.D.N.Y. 2013) ("[T]he subsidiary[] is a Delaware-based corporation . . . Because Plaintiff seeks to disregard the subsidiary's [] corporate form and hold the parent [] liable, Delaware law governs Plaintiff's veil-piercing attack.").

plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors.").  This is a "high hurdle," and Delaware courts "take the corporate form very seriously and will disregard it only in the exceptional case*.*"  *Nat'l Gear*, 975 F. Supp. 2d at 401-02, 404; *Bentivoglio v. Event Cardio Grp., Inc*., 2019 WL 6341130, at *5 (S.D.N.Y. Nov. 27, 2019) ("Delaware courts rarely disregard the corporate form."). Therefore, "the litigant alleging an alter ego relationship has a heavy burden."  *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc*., 283 F.R.D. 142, 150 (S.D.N.Y. 2012); *Am. Lecithin Co.*, 2017 WL 4402535, at *14 ("[A] plaintiff seeking to persuade a Delaware court to disregard the corporate structure faces a 'difficult task.'").

Plaintiff's generalized, conclusory allegations fail to carry this heavy burden.  Accordingly, its alter-ego claim should be dismissed for failure to state a claim.  *See In re BH S & B Holdings LLC*, 420 B.R. 112, 134 (Bankr. S.D.N.Y. 2009) (holding that, under Delaware law, "at the motion to dismiss stage, it is insufficient to make conclusory allegations of mere domination or control by one entity over another" (alteration and internal quotation marks omitted)).

### (1)    Plaintiff Does Not Adequately Allege the Existence of a Single Economic Entity.

Plaintiff does not, and cannot, support its conclusory assertions that TGPNA and the Foreign Defendants "operated as a single economic entity," Compl. ¶ 160, and "did not act as independent corporations, but rather as a single profit-seeking enterprise," *id.* ¶ 126, for all purposes throughout the three-year Class Period, *id.* ¶ 11 (alleging the three companies "acted as a single unit during the relevant period").  "Operating as a 'single entity' requires showing the parent entity's 'complete domination and control' to such an extent that the subsidiary entity 'no longer has legal or independent significance of its own.'"  *Bentivoglio*, 2019 WL 6341130, at *5

(quoting *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. L.P. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999)).

Courts determine whether a subsidiary is subject to the complete "domination and control" of its parent by considering factors such as "whether the corporation was solvent; whether . . . corporate records [were] kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder." *Fletcher*, 68 F.3d at 1458; *Nat'l Gear*, 975 F. Supp. 2d at 403 (same).

As discussed with respect to personal jurisdiction, *supra* at Section IV.A.3, the aforementioned factors demonstrate that TGPNA is a distinct, legitimate entity.  The Complaint does not contest that TGPNA was "solvent," *Fletcher*, 68 F.3d at 1458, and it contains no facts plausibly alleging that TGPNA was financially dependent on TOTAL S.A. or TGPL to function.  Likewise, Plaintiff never asserts that TOTAL S.A. or TGPL improperly accessed or "siphoned corporate funds" from TGPNA.  *Id.*  The Complaint also fails to allege any facts showing a failure to maintain "corporate formalities" independent of the Foreign Defendants, including an independent board of directors and separate books and records.  *Id.*; *see Unocal*, 248 F.3d at 928 ("Total [S.A.] and its subsidiaries observe all of the corporate formalities necessary to maintain corporate separateness.").

Moreover, Plaintiff's assertions that TOTAL S.A. and TGPL were involved in certain aspects of TGPNA's management or operations, *see* Compl. ¶ 125, fall well short of a plausible allegation that TGPNA was a mere façade for the Foreign Defendants.  Even accepting as true the Complaint's various assertions—risk limits on traders, credit guarantees by the parent, and parent officer participation in aspects of a subsidiary's business, *id.*—they describe the common features

26

of many parent-subsidiary relationships that fall well short of complete domination and control. "It is well established law that allegations of mere shared management, shared corporate principles, or a parent's ownership and operation of a subsidiary—even exclusively for the parent's gain—do not merit piercing the corporate veil." *Nat'l Gear*, 975 F. Supp. 2d at 404; *see also, e.g.*, *In re RSL COM PRIMECALL, Inc.*, 2003 WL 22989669, at *16 (Bankr. S.D.N.Y. Dec. 11, 2003) (holding, *inter alia*, that subsidiary's undercapitalization, corporate parent's providing "managerial and other services" to the subsidiary, and the parent's use of the subsidiary as a tool to further the parent's interests were insufficient to state an alter-ego claim under Delaware law).

### (2)   Plaintiff Does Not Adequately Allege the Fraud or Injustice Required to Pierce the Corporate Veil.

Plaintiff's alter-ego theory fails for an additional reason:  the Complaint does not allege the type of fraud or injustice necessary to pierce the corporate veil.  "To satisfy the injustice or unfairness requirement, Plaintiff must plead facts showing that the corporation is a sham and exists for no other purpose than as a vehicle for fraud." *Kirschner v. CIHLP LLC*, 2017 WL 4402545, at *6 (S.D.N.Y. Sept. 30, 2017) (internal quotation marks omitted); *Cohen v. Schroeder*, 724 F. App'x 45, 48 (2d Cir. 2018) ("A corporate veil may be pierced only in the interest of justice, when such matters as fraud . . . are involved." (internal quotation marks omitted)).  "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Wallace*, 752 A.2d at 1184.  The fraud to be shown must be distinct from and in addition to the allegations of the underlying cause of action—the "injustice . . . must consist of more than merely the [claim] that is the basis of the plaintiff's lawsuit." *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 475 (S.D.N.Y. 2017).

Plaintiff does not even try to allege that TGPNA "exist[s] for no other purpose than as a vehicle for fraud." *Wallace*, 752 A.2d at 1184.  And it is fanciful to think that TOTAL S.A. and

TGPL decided in 1990 to form TGPNA so that nearly two decades later TGPNA could violate the antitrust laws in a small part of its business.  Instead of alleging anything close to this, Plaintiff dedicates dozens of pages to explaining TGPNA's complex operating and trading models—the hallmark of a bona fide business—which Plaintiff says were misused by a handful of employees at certain times during a three-year period in the midst of TGPNA's otherwise law-abiding 30-year existence.  *See, e.g.*, Compl. ¶ 22 (alleging TGPNA West Desk employees Tran and Hall "were the primary actors" in the alleged "manipulative scheme").  This utter absence of allegations that the Foreign Defendants created TGPNA as a fraud vehicle prevents Plaintiff from satisfying the "injustice" prong of the alter-ego inquiry.  *See, e.g.*, *Cohen v. Schroeder*, 248 F. Supp. 3d 511, 522 (S.D.N.Y. 2017) ("[The] touchstone of veil-piercing analysis is whether a 'corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors.'" (citation omitted)).

Rather than allege what is required, Plaintiff offers the conclusory allegations that it "is necessary [to pierce the veil] in order to prevent injustice and unfairness," Compl. ¶ 11, and that "respecting the corporate form here would frustrate Congress's statutory mandate to effectively sanction violations of the antitrust laws," *id*. ¶¶ 129-30.  But "those are not factual allegations; they are legal conclusions."  *A.V.E.L.A.*, 241 F. Supp. 3d at 475-76.  "[T]he Court need not accept them when analyzing whether [plaintiff] has alleged plausibly that the [defendant] is [an] alter ego."  *Id.* at 476.  Moreover, allegations invoking the same fraud and injustice that Plaintiff alleges on its "underlying cause[s] of action . . . cannot supply the necessary fraud or injustice" for the veil-piercing inquiry.  *Bentivoglio*, 2019 WL 6341130, at *6 (internal quotation marks omitted).[11]

---

[11]   Indeed, courts routinely reject this form of "bootstrapping."  *See, e.g.*, *VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 381 (S.D.N.Y. 2014) (explaining that such an approach "would render the fraud or injustice element meaningless" (citation omitted)); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp.

Plaintiff also alleges that "adhering strictly to the corporate form" and declining to "treat[] these companies as a single entity could allow TOTAL S.A. to simply pull funds out of (or close) TGPNA's operations if faced with a penalty for violating United States law (whether market manipulation or otherwise)."  Compl. ¶ 129; *see also id.* ¶ 123 ("[T]he law and facts support holding Total [S.A.] and TGPL liable" to avoid TGPNA "escap[ing] liability due to insufficient funds.").  But that reasoning would subject *any* parent to suit whenever a wholly-owned subsidiary is accused of wrongdoing.  It thus comes as no surprise that "Delaware courts have held that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil."  *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008).

Plaintiff has thus failed to plead any fraud or injustice in Defendants' use of the corporate form, and it certainly has not pled fraud with the particularity required under Rule 9(b).  *See, e.g.*, *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) ("[W]here a veil-piercing claim is based on allegations of fraud, the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be examined." (citations and internal quotation marks omitted)).

### (3)     TGPL, A Horizontal Affiliate of TGPNA, Also Cannot Be Held Liable Under an Alter-Ego Theory.

Plaintiff conflates its allegations about the two Foreign Defendants when suggesting alter-ego liability.  As extraordinary as it would be to disregard the corporate separateness of a parent and its subsidiary, it would be even more unusual to conclude that TGPL, a foreign sibling entity with no ownership interest in TGPNA, has somehow turned the latter into an alter ego.  *See* Compl. ¶¶ 18, 20 (alleging that TGPNA and TGPL are both subsidiaries of TOTAL S.A.); Binet Decl. ¶ 3;

---

260, 268-69 (D. Del. 1989) (same); *see also Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 WL 415251, at *4 (Del. Ch. Mar. 4, 2004) (same).

Gillies Decl. ¶ 3.  Where, as here, "a plaintiff seeks to disregard the corporate formalities separating horizontal affiliates . . ., the veils separating *each* entity from the shared corporate parent must be pierced."  *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 349 (S.D.N.Y. 2013) (emphasis added); *see Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996).  Aside from a single conclusory allegation that "TGPL is a mere instrumentality or alter ego of Total [S.A.]," Compl. ¶ 160, Plaintiff has not even attempted to make any factual allegations to support the proposition that TGPL was an alter ego of TOTAL S.A.  Accordingly, there is even less basis to impose alter-ego liability on TGPL.

> **b)**   **Plaintiff Fails to Plausibly Allege Principal-Agent Liability Against the Foreign Defendants.**

Plaintiff's passing reference to principal-agent liability fails too.  In a single sentence, in the very last paragraph of the Complaint, Plaintiff throws in the conclusory allegation that "TGPNA acted as agent for Total [S.A.] and TGPL in undertaking the illegal manipulative scheme and causing the injury alleged herein."  Compl. ¶ 163.  This conclusory statement, unsupported by a single allegation of fact, fails as a matter of law.

Some federal statutes provide for principal-agent liability, but the Sherman Act is not one of them.  *Compare, e.g.*, 15 U.S.C. § 1, *et seq.* (Sherman Act; no provision for principal-agent liability) *with* 7 U.S.C. § 2(a)(1)(B) (Commodity Exchange Act ("CEA") expressly provides for principal-agent liability); *see also Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 618 (S.D.N.Y. 2012) (holding that when "[t]he text of [a federal statute] is silent" as to a particular form of liability, the "silence should not be interpreted as granting and authorizing that liability").[12]  For these reasons alone, the Court should reject Plaintiff's argument.

---

[12]   Moreover, principal-agent liability under statutes like the CEA is used for a different purpose:  "to hold employers liable for the wrongs of their employees in certain situations."  *In re Nat. Gas Commodity*

Even under statutes that allow for principal-agent liability, "a parent corporation is not liable for acts of its subsidiaries simply because it owns the subsidiary's stock." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 272 (S.D.N.Y. 2009). Although "[t]he level of control necessary to form a principal-agent relationship between a parent company and subsidiary defies resolution by mechanical formula[e]," courts are guided by the principle that "the relationship of principal and agent does not obtain unless the parent has manifested its desire for the subsidiary to act upon the parent's behalf, the subsidiary has consented so to act, the parent has the right to exercise control over the subsidiary with respect to matters entrusted to the subsidiary, and the parent exercises its control in a manner more direct than by voting a majority of the stock in the subsidiary or making appointments to the subsidiary's Board of Directors." *Id.* Examples include the "payment of the subsidiary's expenses by the parent company, and requests for approval of the parent company for important decisions by the subsidiary." *In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 209 (S.D.N.Y. 2011).

Substantially the same considerations discussed above in connection with personal jurisdiction and Plaintiff's alter-ego claims, *see supra* at Sections IV.A.3 & IV.B.2(a), apply here. Not only is (and was) TGPNA a financially and operationally independent corporation acting on its own behalf in conducting the trades at issue in this litigation, the Complaint does not even attempt to allege that either TOTAL S.A. or TGPL directed, requested, participated in, or even was contemporaneously aware of, the relevant trades. That alone is fatal to Plaintiff's principal-agent theory. *See, e.g.*, *LIBOR V*, 2015 WL 6696407, at *21 (finding agency pleadings insufficient where there were no facts "indicat[ing] that [subsidiary] acted as [parent's] agent on [the relevant]

---

*Litig.*, 337 F. Supp. 2d 498, 515 (S.D.N.Y. 2004). That case explains that treating parent and subsidiary corporations as principal and agent would require courts to "ignore the equally well-established principles limiting piercing a corporate veil." *Id.*

31

swap transactions or that [parent] supervised [subsidiary's] swap-trading operations").   The Complaint's conclusory assertions of control provide none of the detail needed to allege a principal-agent relationship.   Because the relationship described is "in no way diff[erent] from an ordinary relationship between a parent corporation and a . . . subsidiary," Plaintiff fails to state a claim.   *In re S. African Apartheid Litig.*, 617 F. Supp. 2d at 274.

### C.   All Claims Should Be Dismissed Under Rule 12(f) for Resting on Unadjudicated Agency Accusations.

For the reasons stated in TOTAL S.A.'s and TGPL's Motion to Strike, also filed today, Plaintiff may not rely on unadjudicated, preliminary accusations made by FERC's enforcement staff.   *See also* Dkt. 25 (TGPNA's Motion to Strike).   The vast majority of the Complaint's allegations about TGPNA's alleged bidweek trading strategy, as well as the relationships among and between TGPNA, TOTAL S.A., and TGPL, are derived wholesale from the April 1, 2016 FERC Staff Report.   When those parts of the Complaint are disregarded, the Complaint is devoid of any plausible allegations as to personal jurisdiction over the Foreign Defendants or the merits of any of Plaintiff's claims, and thus should be dismissed.   *See In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593-95 (S.D.N.Y. 2011) (dismissing complaint following successful motion to strike because stricken allegations had "permeated the complaint").

### D.   Plaintiff Also Fails to State Any Claim Against TOTAL S.A. or TGPL for the Same Reasons Explained in TGPNA's Motion to Dismiss.

In addition to the reasons that TOTAL S.A. and TGPL cannot be held liable for any of TGPNA's purported conduct, Plaintiff's claims against the Foreign Defendants still fail for the simple reason that Plaintiff fails to establish standing or state a claim against TGPNA.   *See* Dkt. 27. As explained in TGPNA's Motion to Dismiss, the Complaint is fatally flawed for multiple reasons that also apply to the claim against the Foreign Defendants.

*First*, Plaintiff lacks Article III standing because it has not met the injury-in-fact requirement. *See Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir. 2003). Plaintiff does not allege that it was a net purchaser of natural gas during the Class Period; to the contrary, it alleges that it resells the gas it buys to third-party commercial and residential consumers. *See* Compl. ¶ 17; Dkt. 28 Exs. 4-5; *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *8 (S.D.N.Y. Apr. 15, 2016) (requiring that "named plaintiffs held a net position consistent with injury"). *Second*, Plaintiff's claims are time-barred by the applicable statutes of limitation, *see* 15 U.S.C. § 15b (four years for antitrust claims); Cal. Bus. & Prof. § 17208 (four years for UCL claims); *Fed. Deposit Ins. Corp. v. Dintino*, 84 Cal. Rptr. 3d 38, 50 (Cal. Ct. App. 2008) (three years for unjust enrichment claims), because this action was filed more than seven years after the putative Class Period, and Plaintiff's conclusory attempts to plead fraudulent concealment cannot preserve its untimely claims, *see SEC v. Jones*, 476 F. Supp. 2d 374, 382 (S.D.N.Y. 2007). *Third*, Plaintiff lacks antitrust standing to assert its only federal claims because it does not adequately allege either antitrust injury or that it is an efficient enforcer of the antitrust laws. *See In re SSA Bonds Antitrust Litig.*, 2018 WL 4118979, at *6 (S.D.N.Y. Aug. 28, 2018) ("[C]ourts have found no injury where the plaintiffs failed to allege any specific transactions . . . that harmed them."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 581 n.160 (S.D.N.Y. 2018). *Fourth*, Plaintiff's claims of monopolization and attempted monopolization fail because the Complaint does not plausibly allege that TOTAL S.A., TGPL, or TGPNA possessed the requisite market power, attempted to attain such power, engaged in any exclusionary conduct, or had any anticompetitive purpose. *See In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.*, 2013 WL 1100770, at *6 & n.6 (S.D.N.Y. Mar. 18, 2013). *Finally*, Plaintiff's pendent state law claims for unjust enrichment and violation of California's Unfair Competition

Law fail for multiple reasons, including that Plaintiff alleges no relationship with TGPNA, no benefit to TGPNA at Plaintiff's expense, and no plausible harm to Plaintiff whatsoever. *See In re London Silver Fixing, Ltd., Antitrust Litig*., 213 F. Supp. 3d 530, 574 (S.D.N.Y. 2016).

## V.    CONCLUSION

For all of the foregoing reasons, plus those set forth in the accompanying Motion to Strike and Defendant TGPNA's Motions to Dismiss and Strike, the Court should dismiss with prejudice the entirety of the Complaint against TOTAL S.A. and TGPL.

Dated:  February 3, 2020
         New York, New York

                              Respectfully submitted,


                              GIBSON, DUNN & CRUTCHER LLP

                              By: _/s/ Brad Schoenfeldt_____
                                    Brad Schoenfeldt

                              200 Park Avenue, 48th Floor
                              New York, NY 10166-0193
                              Telephone: (212) 351-4000
                              Facsimile: (212) 351-4035
                              Email:  bschoenfeldt@gibsondunn.com

                              William S. Scherman (*pro hac vice*)
                              David Debold (*pro hac vice*)
                              Jason Fleischer (*pro hac vice*)
                              GIBSON, DUNN & CRUTCHER LLP
                              1050 Connecticut Ave. N.W.
                              Washington, D.C. 20036
                              Telephone:  (202) 955-8500
                              Facsimile:  (202) 467-0539
                              wscherman@gibsondunn.com
                              ddebold@gibsondunn.com
                              jfleischer@gibsondunn.com

                              *Attorneys for Defendants TOTAL S.A. and TOTAL Gas & Power Ltd.*

34